# Ala. Great Southern R. R. Co. *v.* Hill.

*Action for Damages by Passenger, for Personal Injuries.*

1. *Appointment of experts by court.*—Where an examination of the plaintiff's person by physicians or surgeons appointed by the court is demanded by the defendant as matter of right, with a view to determine the nature and extent of the injuries received, the selection of such experts is entirely within the discretion of the trial judge, who is not required to yield to the suggestions or wishes of either party; and his refusal to appoint a particular physician at the instance of the defendant is not revisable on error or appeal.

2. *Motion to postpone trial.*—A motion to postpone the trial until a later day, like a motion for a continuance, is addressed to the unrevisable discretion of the trial court.

3. *Motion for new trial.*—A motion for a new trial, prior to the statute now of force (Sess. Acts 1890-91, p. 779), was addressed to the discretion of the trial court, and its refusal was not revisable.

4. *Proof of physical condition, as relevant to question of nature and extent of injuries received.*—Where plaintiff sues to recover damages for physical injuries received by the derailment of a railroad car in which she was a passenger, the fact, nature and extent of her injuries being controverted, she may testify that, before and up to the time of the accident, she had always' enjoyed good health, and her physical organs had discharged their functions naturally and regularly; may describe the manner in which she was jostled and tossed about before the car turned over; and may state that "she could hardly get up," "was suffering great pain," "could not sleep afterwards unless she had some medicine to quiet her," "had not undertaken since to walk any great distance, and could not walk any great distance," "that her menstruations had been irregular ever since she was hurt," etc.

5. *Testimony of physician as expert; reason or motive as evidence.* Plaintiff's attending physician having made an examination of her person, and testified as to the nature and extent of her injuries, stating that he found the coccyx bone somewhat disjointed, causing great pain, but that this might be cured by the removal of the bone by a surgical operation, he can not be asked why he did not "call in some surgeon and remove it."

6. *Effect of physical injuries as element of damages.*—Every physical endowment, function and capacity, being of presumed importance in the economy of life, any wrongful injury which destroys it, or renders its discharge painful or perilous, is an element of damages; and therefore, where plaintiff, a young unmarried woman, sues for damages on account of personal injuries sustained by a railroad accident, her attending physician may testify that her injuries might render child-bearing perilous to life.

[Alabama Great Southern Railroad Co. v. Hill.]

7. *Evidence as to defective condition of rails and cross-ties.*—The evidence tending to show that the derailment of the coach, in which plaintiff was riding at the time of the accident, was caused by the breaking of a rail as the coach passed over it, and that this was caused by the defective condition of the rail and the cross-ties under it; it is competent for plaintiff to prove that other rails and cross-ties, at and near the place, were also old, worn, rotten, and decayed.

8. *To what witness may testify; opinion, or judgment.*—A witness may testify to a fact "to the best of my judgment, but I won't be positive;" this being but the statement of his best recollection.

9. *Leading questions* to a witness may be disallowed.

10. *Care and diligence exacted of railroad companies toward passengers.*—In an action by a passenger against a railroad company, to recover damages for personal injuries sustained, a charge instructing the jury that the duty is devolved on them to determine whether the defendant "has used that *strict diligence* which the law requires in providing for the safety of its passengers," is not objectionable as requiring too high a degree of care and diligence.

11. *Same; burden of proof.*—When a passenger sues to recover damages for personal injuries received in a railroad accident, caused by a collision, the derailment of the car in which he was riding, or other like occurrence, proof of these facts raises a presumption of negligence, and imposes on the defendant the burden of satisfying the jury that the accident could not have been prevented by the exercise of the highest degree of care, skill and diligence.

12. *Charge to jury as to expert testimony.*—Where several physicians testified as experts as to plaintiff's physical condition, the nature and extent of her injuries, their probable consequences, &c., and the court thereupon instructed the jury, *ex mero motu,* "that the opinion of expert witnesses should not be substituted for such opinion as the jury may form from the whole facts and whole evidence in the case;" "that these opinions should be weighed along with all the other facts in the case;" "that in no case should the jury accept the opinion of an expert as true, unless it agrees with their conclusions as based on all the facts in the case, and such opinion should be considered in connection with all the other facts in making up their conclusion upon each fact it bears upon;" *held,* that these several expressions, all being construed together, involved no reversible error.

13. *Argument of counsel to jury.*—A party can not complain of remarks of counsel in argument to the jury, outside of the case and improper in themselves, when it appears that they were made in reply to similar remarks of his own counsel.

14. *Averments and proof of negligence.*—Under a count which alleges that, at the time and place of the accident by which plaintiff was injured, the car in which she was riding being thrown from the track and overturned, the rails on the track were old, worn and unsound, and the cross-ties rotten and unsound; "that the train was running at a great rate of speed, and that said accident was caused by the gross negligence of defendant in running said train at such rate of speed over said rails, and in using and permitting to be used said old and worn rails and said rotten and unsound cross-ties after they had become unfit for use;" the averment of negligence not being confined to the rate of speed at which the train was running, the defendant can not claim a verdict, on the ground that there is no evidence showing an improper rate of speed, especially where it appears that the cars, after leaving the rails, ran three hundred yards before they were stopped—a fact which is, of itself, some evidence that they were running at a high rate of speed.

15. *Averment and proof of injuries.*—Where the complaint avers, in general terms, that the plaintiff was bruised and injured internally and externally, specifying several particular injuries, the defendant

[Alabama Great Southern Railroad Co. v. Hill.]

can not claim a verdict because of the failure to prove one or more of the particular injuries as alleged.

16. *Rotten cross-ties and worn rails as negligence; damages.*—Evidence showing that the accident was caused by a broken rail, that the rails and cross-ties at that place were worn, rotten and unsound, and that old rails were being constantly used to repair the track there, is sufficient to authorize the jury to infer that the railroad company had knowledge of this condition of things, and to impute to it such recklessness or wantonness as is the equivalent of conscious wrong-doing in continuing to run trains over a track in such condition; and so finding, the jury may award punitive damages.

17. *Same.*—The imposition of vindictive, exemplary or punitive damages against a railroad company, on account of injuries to a passenger in an accident caused by the condition of the track, is not limited to cases in which there is "an entire want of care" on the part of the company in the maintenance of its track; since, although some degree of care may have been exercised in that respect, the track may have been consciously left in such condition that running trains over it would probably result in accidents involving injuries to passengers.

18. *Charge on part of evidence.*—The court is under no obligation to single out the testimony of one witness or more, and instruct the jury to reach certain conclusions if they believe it, thereby giving undue prominence to such testimony, and tending to obscure and minimize other evidence bearing on the same point; and such a charge may properly be refused.

19. *Charge as to sufficiency of evidence.*—To authorize a verdict for the plaintiff in a civil case, the jury must be "reasonably satisfied" of the existence of every fact necessary to make out his case; but a charge requested which instructs them that they must find against him if their minds are left "in doubt and uncertainty" as to any material fact, requires too high a measure of proof, and is properly refused.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Miss Nollie C. Hill, against the appellant corporation, to recover damages for personal injuries sustained by plaintiff, on the 27th September, 1887, while travelling as a passenger on defendant's road between Sulphur Springs and Birmingham; and was commenced on the 7th February, 1888. On the first trial, the plaintiff had a judgment on verdict for $8,000; but the judgment was reversed by this court on appeal, and the cause was remanded, because the court below had refused to require the plaintiff, on demand of the defendant, to submit to an examination of her person by physicians and surgeons, one or more, appointed by the court, to ascertain and testify as to the nature and extent of the injuries which she had received, and as to which her own physician had testified after having made one or two examinations. On the second trial, as shown by the present record, the court appointed Dr. Wm. H. Johnston and Dr. Jno. B. Gaston as experts to make an examination of the plaintiff's person, but refused to appoint Dr. Robert Batty, on request of

[Alabama Great Southern Railroad Co. v. Hill.]

the defendant, because his affidavit had been used as evidence on a former motion for a new trial; and an exception was reserved by the defendant to the refusal of the court to appoint him. Numerous other exceptions were reserved by the defendant to the rulings of the court on motions, the admissibility of evidence, charges given, and the refusal of charges asked; and all of these rulings are here assigned as error, making 65 assignments in all. The plaintiff had a judgment on verdict for $8,500, and the court overruled a motion for a new trial. The opinion states the material facts connected with the points decided, and renders unnecessary any additional statement of facts.

EDWARD COLSTON, H. M. SOMERVILLE, WOOD & WOOD, and JNO. M. MARTIN, for appellant, submitted printed arguments in which they discussed each of the assignments of error; and printed arguments for the appellee were submitted by TALIAFERRO & SMITHSON.

McCLELLAN, J.—It was determined on the former appeal in this cause that the defendant was entitled to have a physical examination of the plaintiff's person made by disinterested and competent experts to be appointed by the court. The selection of such experts is a matter entirely within the discretion of the trial judge. Neither party has any right, by suggestion, motion, or otherwise, to control his discretion in any degree. The court, in making the order for a physical examination, and in designating the experts to execute it, is conserving the interest of neither the defendant nor the plaintiff, but the ends of justice; and when a competent and impartial commission is named, it is a matter of no consequence whatever that the parties, or either of them, preferred and demanded the appointment of other persons. There is no suggestion here that the physicians selected were not in all respects qualified to discharge the duty imposed upon them by the order of the court; and the court's declination to appoint Dr. Batty, at the instance of the defendant, is not a matter which this court will review. Moreover, were this action revisable, we are by no means prepared to say that the fact that Dr. Batty had already formed and expressed an opinion relative to the existence of the injuries laid in the complaint was not ample justification · for the court's refusal to appoint him on the commission.

2. Motions to postpone a trial to a later day of the term stand upon the same footing as applications for continuances from term to term; and both are addressed to the unrevisable

[Alabama Great Southern Railroad Co. v. Hill.]

discretion .of the court.—*DeArman v. State,* 77 Ala. 10; *Walker v. State,* 91 Ala. 76; 9 So. Rep. 87; 2 Brick. Dig. pp. 404–5.

3. This cause was tried in October, 1890, before the passage of the act allowing appeals to this court from "decisions of the City and Circuit Courts in this State granting or refusing to grant motions for new trials" (Acts 1890–91, p. 779); and the action of the City Court, in denial of the application for a new trial made by the defendant, can not be reviewed. *Trammell v. Vane,* 62 Ala. 301; *Tyree v. Parham,* 66 Ala. 424; *Bedwell v. Bedwell,* 77 Ala. 587; *A. G. S. R. R. Co. v. Hill,* 90 Ala. 71.

4. Damages are claimed in this action for that the plaintiff, a passenger on defendant's train, received from the derailment of the car in which she was being transported injuries which produced present and continuing pain and mental anxiety, immediate physical hurts, which are permanent in their character, and are alleged to have seriously impaired her health and threatened her life. Whether she was injured at all was a point of much controversy in the case. Similarly, each detail and specification of injury was made the subject of severe contestation on the trial. Whether the injuries, if any, were painful, and in what degree; whether she was shocked and prostrated; whether she was subsequently in bad health as a resultant of the injuries she received; whether, and to what extent, her physical condition after the accident was abnormally bad, were, with other like injuries, injected into the case by the pleadings, and prosecuted before the jury. We can not for a moment be in doubt that, as pertinent to these issues, it was entirely competent for the plaintiff to prove that she had always enjoyed good health before, and up to the time of the derailment; that her physical organs had theretofore discharged their functions naturally and regularly; the manner in which she was jolted, tossed and thrown about, as the car ran for some distance on the cross-ties and finally turned over an embankment; that immediately afterwards she "could hardly get up," and was "suffering great pain;" that afterwards she "could never sleep unless she had some medicine to quiet her;" that she "had not undertaken since the accident to walk any great distance, and could not walk any great distance;" that "her menstruations had been irregular ever since she was hurt;" &c., &c. All this evidence was, in our opinion, clearly admissible, as tending to show the fact and extent and character of the injuries which she had sustained.—*Bay Shore R. R. Co. v. Harris,* 67 Ala. 6; *E. T., V. & G. R. R. Co. v. Lockhart,* 79 Ala. 315; *S. & N. Ala. R.*

[Alabama Great Southern Railroad Co. v. Hill.]

*R. Co. v. McLendon*, 63 Ala. 266 ; 2 Thompson Neg. 1256–7.

5. The reasons which actuated Dr. Drennen to his omission "to call in some surgeon and remove" the coccyx bone could not, of course, have any bearing upon plaintiff's right of recovery, nor tend to lessen or increase her damages. Nor do we conceive that such reasons could have affected the credibility or value of his testimony as an expert. He testified that the condition of this bone was the cause of much pain to the plaintiff, and that this condition could be cured by its removal by a surgical operation to which he did not deem himself equal. Add to these facts the concession of what is assumed in the question, that he did not call in a surgeon, &c., and it would seem that, standing alone, they involve a greater tendency to impeach his competency as an expert than any explanation of his failure to take steps for the operation would have done. We can not assume that the reasons called for by the question would have been of such character as to impugn the intelligence and professional attainments of the witness. Moreover, we know of no basis for a distinction between witnesses of this and other classes, which would take these, when speaking to matters of this kind, out the general rule against drawing out the reasons which cond d to an act or omission to which they depose.—*Herring v. S ggs*, 62 Ala. 180.

6. The objection to the testimony Dr. Drennen, to the effect that plaintiff's injuries were of ch character as that child-bearing would be thereby ren d perilous to life, is untenable. It may be that she mig ever have married, even had she not been injured ; or t marrying, she might have had no desire to bear childre even that, desiring issue, she might not have had any, as argued by counsel ; but these considerations can exert no influence on the question. It is to be assumed that every physical endowment, function and capacity is of importance in the life of every man and woman, and that occasion will arise for the exercise of each and all of them. And to that extent to which any function is destroyed, or its discharge rendered painful or perilous by the wrongful infliction of personal injury, is the party complaining entitled to damages. We can, in other words, conceive of no physical injury, wrongfully inflicted, whether entailing pain only, or disfigurement, or incapacity, relative or absolute, to perform any of the functions of life, which may not be made the predicate for compensation in damages. *Birmingham v. Lewis*, 92 Ala. 352 ; 9 So. Rep. 243.

7. The evidence tended to show that the immediate cause of the derailment, from which the injury complained of resulted, was the breaking of a rail as the coach in which plaintiff was

riding passed over it, and also that the rail gave way in consequence, in part, of the defective condition of the cross-ties under it, and in part, of the rail itself being old and worn. Plaintiff was allowed, against defendant's objection, to adduce evidence going to show that other rails and cross-ties along there were also old, worn, rotten, decayed, &c. There was no error in this. It may well have been that other defective rails and cross-ties in the immediate vicinity contributed to the breaking of the particular rail, by imparting an irregular motion to the cars, and causing them to bear down with greater weight and force at the point where the track gave way. Moreover, all this evidence was competent as affording a stronger inference that defendant's employés knew of the perilous condition of the track, including that portion constituted of the broken rail and the ties beneath it, than would have been afforded by proof confined to the particular rail and ties.—*Railroad Co. v. Johnson*, 15 Lea (Tenn.) 677.

8. The testimony of the witness Curley, that "to the best of my judgment, what we called in the 'short quarter,' where the rail was broken out, was on a rotten cross-tie, but I wont be positive," was but the statement of his best recollection about a fact—that the rail broke on a rotten tie—as to which he would not speak positively, and was properly received. *Head v. Shaver*, 9 Ala. 791; *Wright v. Bolling*, 27 Ala. 259; *Elliott v. Dycke*, 80 Ala. 376.

9. The action of the court in disallowing the question propounded by the defendant to its witness, Dr. Gaston, "You have had many cases of obstetrics, have you?" may be justified upon the leading character of the question.

10. The law imposes upon common carriers the duty of exercising the highest degree of care, skill and diligence in the transportation of passengers, and holds them responsible for the consequences of the slightest negligence resulting in injury to persons sustaining that relation to them. The first paragraph of the general charge to which exception was taken, which implies that the law requires "strict diligence" of such carriers, is well within the principle.—*Searle's Adm'r v. V. K. & O. Railway Co.*, 37 Amer. & Eng. R. R. Cases, 179; *L. & N. R. R. Co. v. Snyder*, (Ind.) *Ib.* 137; s. c., 16 Amer. St. Rep. 60; Notes to *Iverson v. So. Pac. Railway Co.*, 44 Amer. & Eng. R. R. Cases, 319; *L. & N. R. R. Co. v. Ritten*, 28 *Ib.* 167; *L. E. & W. Railway Co. v. Daughtery*, 6 *Ib.* 139; *P. R. R. R. Co. v. Anderson*, *Ib.* 407; *B. S. O. & B. R. R. Co. v. Rainbout*, 21 *Ib.* 466; *Topeka City Railway Co. v. Higgs*, 5 Amer. St. Rep. 754; *Smith v. St. P. City Railway Co.*, 16 Amer. & Eng. R. R. Cases, 310; *Dodge v. B. & B. St.*

[Alabama Great Southern Railroad Co. v. Hill.]

*Railway Co.*, 12 Amer. St. Rep. 541; *Treadwell v. Whittier*, 80 Cal. 575; s. c., 13 Am. St. Rep. 175; Hutchinson on Carriers, §§ 503, 799–801; Thomp. Carriers Passengers, 175 *et seq.;* 2 Amer. & Eng. Ency. of Law, p. 745; 2 Wood Railway Law, p. 1095; *L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *Ga. Pac. Railway Co. v. Love*, 91 Ala. 432; 8 So. Rep. 714; *M. & E. Railway Co. v. Mallette*, 92 Ala. 209.

This high degree of care is imposed by the law as being *reasonable*, in view of the relation existing between the carrier and his passenger; and it is in this sense that the term "reasonable care" must be taken to have been employed in *Smith v. Ga. Pac. Railway Co.*, 88 Ala. 540.

11. In *Mallette's Case, supra*, we had occasion, immediately following the proposition just stated, and after citing the authorities there referred to, to announce the doctrine, that under certain circumstances a presumption of negligence on the part of the carrier arises from proof of an accident and consequent injury to a passenger. We there said: "The authorities present equal unanimity to the proposition, that where a passenger receives injuries from the breaking down of the carrier's vehicle, from the derailment of a car, from collisions, and the like occurrences, which would not ordinarily take place but for some negligence on the part of the carrier, the *prima facie* presumption is, that the injury is the result of the carrier's negligence; and in an action therefor, the plaintiff having shown that he was a passenger, and that he was injured by the derailment, for instance, of the car in which he was being transported, he is, upon this and without more, entitled to recover the damages thereby sustained, unless the defendant, in rebuttal of this *prima facie* presumption, reasonably satisfies the jury that the derailment was not due to any negligence, and could not have been prevented by the exercise of the highest degree of care, skill and diligence on the part of the carrier."—Authorities *supra;* Thompson on Carriers, 181 *et seq.;* 2 Wood's Railway Law, 1096; 2 Amer. & Eng. Ency. of Law, pp. 768 *et seq.; B. & O. R. R. Co. v. Weightman*, 29 Gratt. (Va.) 431; *Central R. R. Co. v. Sanders*, 73 Ga. 162; *Hipsley v. K. C. S. J. & C. B. Railway Co.*, 27 Amer. & Eng. R. R. Cases, 287, and note; *Street Railway Co. v. Leonhardt, 1 b.* 194; *E. S. R. R. Co. v. Timmons*, 40 *1 b.* 998, and note; *Stokes v. Saltonstall*, 13 Peters, 181; *Railroad Co. v. Pollard*, 22 Wall. 341; *L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *Ga. Pac. Railway Co. v. Love*, 92 Ala. 432; 8 So. Rep. 714. The cases of *Ga. Pac. Railway Co. v. Hughes*, 87 Ala. 610, and *L. & N. R. R. Co. v. Reese*, 85 Ala. 497, to which our attention has been invited in this

connection, are not in point. The parties injured, and who were plaintiffs in those actions, were not passengers of the defendant companies; and the principles we have been considering had no application in either of them.—*M. & E. Railway Co. v. Mallette, supra.* The evidence in this record brings the present case strictly within this principle. The plaintiff was a passenger being transported on a car of the defendant; the car was derailed, and she received the injuries of which she complains as a result of that derailment. The numerous authorities cited fully meet and overturn the position of counsel attempted to be based on the case of *Ga. Pac. Railway Co. v. Hughes, supra,* and determine the exceptions reserved in this regard against the appellant.

12. Quite a number of medical and surgical experts were examined in this cause. The testimony of most of them consisted both of facts involved in the physical condition of the plaintiff subsequent to the accident, and of opinions as to the causes of that condition, the consequences to flow from it, the feasibility and means of relief, or amelioration of it, &c., &c. Those paragraphs of the court's general charge with respect to the testimony of these experts, to which exceptions were reserved, had reference solely to this opinion evidence, and not to any fact testified to by them. The court instructed the jury, that "the opinion of expert witnesses should not be substituted for such opinion as the jury may form from the whole facts and whole evidence in this case; and this opinion should be weighed along with all the other facts in the cause;" and that "in no case should the jury accept the opinion of an expert as true, unless it agrees with their conclusions as based upon the whole facts of the case; and such opinion should be considered in connection with all the other facts in making up the conclusion of the jury upon each fact it bears upon." These paragraphs of the general charge, relating to the same matter, must be construed together. It is the settled doctrine of this court, "that the general charge, given *ex mero motu* in the court below, should be read and construed with regard to the connection between its several sentences and propositions, each declaration being shaded and interpreted in the light of its context; and if any part, when so considered, limited or expanded, asserts the law correctly, it will not furnish ground for reversal, however faulty the particular clause might be if its meaning was not controlled by prior or subsequent passages."—*M. & E. Railway Co. v. Stewart,* 8 So. Rep. 708; s. c., 91 Ala. 421; *Williams v. State,* 83 Ala. 68; *O'Donnell v. Rodiger,* 76 Ala. 22. Looking at each of these paragraphs in the light shed upon it by the other, and limiting and ex-

[Alabama Great Southern Railroad Co. v. Hill.]

panding the several propositions of each by the context of both, or, in other words, arriving at the meaning the trial court intended to convey from all that was said on the subject, as the jury must have done, we evolve out of these paragraphs no more than this proposition: that, if the jury reach a given conclusion from a consideration of the whole evidence, including as well the opinions of the experts as substantive facts deposed to by witnesses, whether experts or non-experts, they are not to surrender this conclusion, which is *their* opinion upon the whole evidence, because the opinions of the experts do not concide with theirs, but lead to a different result; or, to express the same thought in variant phraseology, the jury are not to substitute for their own views of what is established by the whole evidence—substantive and opinion, expert and non-expert—the opinion of expert witnesses; for, to thus surrender their own conclusions, and substitute instead the conclusions of witnesses as to what was proved by the evidence, would be to make such witnesses, and not the jury at all, the triers of the cause. We do not think that either of the paragraphs excepted to is an instruction on the weight to be accorded the opinion evidence. To the contrary, each and both of them leave that question entirely an open one for the jury, and only confine such opinions to the legitimate office of all evidence, that of being considered with every other fact and circumstance laid before the jury in arriving at their conception of the truth, thus guarding them against the error of allowing the expert opinions to be substituted for their own judgment. The exceptions reserved in this connection are untenable.—Rodgers' Expert Testimony, § 37 *et seq.*; Lawson Expert & Opinion Ev., p. 240; *Brehen v. R. R. Co.*, 34 U. S. 45; Note to *Harmond v. Woodman*, 66 Amer. Dec. 230.

13. That part of the closing argument of plaintiff's counsel, to the court's rulings in respect of which exceptions were reserved, appears to have been in reply to the argument of defendant's counsel, and to have been of the same general character. The opening sentences of the language complained of are: "I never did in my life, and I challenge the gentleman to name a law-suit in which I have been practicing law in the city of Birmingham where I have done it (abused men who are employès of railroads). On the contrary, gentlemen, if I may be allowed to speak my sentiments, as he (counsel for defendant) has been allowed to speak his, my sympathies are always with the employès of a railroad," &c., &c. The fair inference from this language, which went unchallenged, so far as the fact of its being responsive to defendant's counsel is concerned, is that, if what followed is outside of the case, so

also was the language of the opposing counsel in the same connection; and the refusal of the trial court to exclude the remarks objected to from the jury may well be justified on that ground alone. A party can have no just ground of complaint on account of remarks, improper in themselves, which have been necessitated by like remarks on the other side.

14. Charges 1, 2 and 3, requested by the defendant, and refused, being the general charge on the whole case, and upon the first and second counts, respectively, are not insisted on. Their refusal was palpably proper. Charge No. 4 of defendant's series is as follows: "If the jury believe the evidence in this cause, they must find their verdict for the defendant under the third count of the complaint." It is strenuously insisted that this charge should have been given. The argument in its support proceeds on the theory, that this charges negligence only *in the running of the train at great speed,* and that there is no evidence in the case tending to show negligence in the manner in which the train was run (moved) at the time and place of the accident, or that it was being run at great speed. This theory is not supported as to either of its postulates. The third count of the complaint not only alleges the negligent running of the train at a "rapid rate of speed," and that the rails at the point of derailment were old iron rails, worn, unsound, insecure and unfit for use, and that the cross-ties on which said rails were laid were unsound, rotten and insecure, but also "that said accident was caused by the gross negligence of said defendant in running its train at such a rate of speed over said rails, and (in addition to all this, and wholly irrespective of the *running* of the train, or the manner and rate of such running) by the gross negligence of said defendant in using and permitting to be used said old and worn iron rails, and rotten and unsound cross-ties, after they had become unfit for use on said road."

Had the burden, beyond proof of derailment and consequent injury to a passenger, been on plaintiff to show negligence on the part of the defendant, she would have been entitled to recover on this count on proof that the de ailment was caused by the defective condition of the track, and without any evidence of negligence in respect of the running of the train.—*L. & N. R. R. Co. v. Jones,* 83 Ala. 376. The other assumption involved in appellant's position in reference to this charge (No. 4) is equally without support. The fact that the train ran three hundred yards with some of the cars off the rails and on the ties, and when presumably every effort was being made to stop it, is itself some evidence that a high rate of speed, amounting to negligence, especially when con-

[Alabama Great Southern Railroad Co. v. Hill.]

sidered in connection with the condition of the track, was being maintained.  ·

15. Charges 5, 6, 7, 8, 35 and 36 proceeded on the assumption that the only injuries alleged in the case, or in the several counts, consisted in displacement of plaintiff's womb, and in an injury to the last vertebra of her spinal column. The assumption is gratuitous, as a reading of the complaint will demonstrate. These charges were well refused.

16. The matter of exemplary damages was before this court, as were many other points now again presented, on the former appeal. We then said: "We discover no error in the rulings of the trial court on the question of punitive damages. There was evidence in the case tending to show that the cross-ties, or a considerable portion of them, under the track at the point of the derailment of the car in which plaintiff was riding, the wreck being the result of a broken rail, were 'unsound,' 'decayed,' 'rotten;' that the rail which broke was an 'old rail,' as were others along there, and that the defendant company was 'constantly repairing that old track with old rails.' With the weight or sufficiency of this evidence we have nothing to do. Whether or not its tendencies were entirely rebutted by other testimony, is also beyond our inquiry. Those were questions for the jury. We are satisfied that it tended to show a condition of the track, not to know and remedy which was such gross negligence on the part of the company as implied recklessness and wantonness—such indifference to the probable consequences of its continued use, such disregard of the safety of passengers being transported over it—as is the equivalent of intentional wrong, or a willingness to inflict the injuries complained of. And if the jury found the facts to be in accordance with this tendency of the testimony, they were authorized to return a verdict for exemplary damages."

The evidence in this record is substantially the same on this subject as that adduced on the former trial. The conclusion then reached, we now re-affirm. What was then said, however, is open to criticism in that it authorized the conclusion that recklessness or wantonness could be predicated of the mere omission of a duty *to know* the condition of the track which the evidence tended to establish. That this was an inaccurate statement of the doctrine was attempted to be demonstrated by the present writer in the subsequent case of *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 263; 9 So. Rep. 230; and the inaccuracy was specifically pointed out in the yet later case of *R. & D. R. R. Co. v. Vance,* ante, p. 144. That statement, however, was an abstraction. No result depended upon it

there, and none depends on it here.   As we reiterated in the case last cited, the condition of the rails and cross-ties, and the fact of old rails being used constantly to repair that old track, was sufficient to authorize an inference on the part of the jury that the defendant knew of this condition of things, and to impute to them such recklessness or wantonness as is the equivalent of conscious wrong-doing in continuing to run trains over a track in such dangerous condition.   So finding, the jury were further authorized to impose punitive damages. It follows that the several charges requested by the defendant below on the assumption, or to the effect, that there was no evidence in the case of recklessness or wantonness were properly refused.—*A. G. S. R. R. Co. v. Hill*, 90 Ala. 71; *Ga. Pac. Railway Co. v. Lee*, 9 So. Rep. 230; *R. & D. R. R. Co. v. Vance, ante,* p. 144.

17.   Charge 20, requested in this connection, is bad in that its tendency is to limit the imposition of vindictive damages to cases in which there is an "entire want of care" on the part of the defendant in respect of maintenance of its track, if not also in postulating facts of some of which there is no evidence. Some degree of care may have been exercised in the maintenance of the track, and yet it may have been consciously left in such condition as that to run trains over it would probably have resulted in disasters of the kind alleged here.

18.   The court is under no obligation to single out the testimony of one or more witnesses, and instruct the jury to reach certain conclusions if such testimony be believed.   To do so has a tendency to give undue prominence to the evidence of the witnesses thus separately set before the jury, and to obscure and minimize other evidence bearing on the point.   Such would have been the tendency of charge 21, requested by the defendant, with respect to the testimony of Doctors Gaston and Johnston; and its refusal may be justified on that ground. *Salm v. State,* 89 Ala. 56; *Kennedy v. State,* 85 Ala. 327; *Fariss v. State, Ib.* 1.

19.   In *Calhoun v. Hannon,* 87 Ala. 277, this court said: "The burden being on the plaintiff to show falsity of the affidavit in respect to the ground alleged for the issuance of the attachment, he must reasonably satisfy the minds of the jury in this regard.   Manifestly, if their minds are left in a state of confusion and uncertainty on this point, the plaintiff has failed to make out this very essential part of his case, and can not recover."   This case is relied on to support the exceptions reserved to the action of the trial court in refusing to give charges which asserted that if the jury were "in *doubt* and uncertainty" as to certain facts essential to the plaintiff's case,

[Bradfield v. Elyton Land Company.]

they should find against her. The case is not authority to the point. The mind may be reasonably satisfied of a given fact, and yet not be certain of it, nor free from doubt in respect of it; but no mind can be said to be reasonably satisfied as to the existence of a particular fact, which is in a state of *confusion*—the synonym, when applied to mental processes and conditions, of bewilderment and distraction—in respect thereto. These charges would have required a greater measure of proof than is necessary even in criminal cases, in that the conviction on the part of the jury would have had to be to the exclusion of doubt and uncertainty, whether reasonable or not.—*Harris v. Russell*, present term.

A number of other charges were requested by the defendant and refused. They have all received. careful consideration. We shall not, however, further extend this opinion by a discussion of them in detail. Each of them will be found to be either unsound in the abstract, or argumentative, or misleading, or invasive of the province of the jury, or to assume the existence of evidence not found, or the non-existence of evidence which is found in this record; and many of them are open to more than one of these objections. Similarly, we pretermit discussion of three or four rulings on the evidence, because the objections to them are obviously lacking in merit. Every point made in the case has been considered—a great number of them, indeed, were passed on when the case was here before—and all plausible exceptions have been written upon. We find no error in any ruling of the trial court, and the judgment is affirmed.