[No. 21308. Department One. November 22, 1928.]

J. M. ELLIOTT et al., *Respondents*, v. C. P. ARROWSMITH et al., *Appellants*.[1]

*Farrell, Meier & Meagher,* for appellants.

*Crandell & Crandell* and *H. H. Benton,* for respondents.

TOLMAN, J.—This is a personal injury case growing out of an automobile collision. A trial was had to a jury, which returned a verdict against the defendants

[1] Reported in 272 Pac. 32.

in the sum of five thousand dollars. From a judgment on the verdict they have appealed.

As we see it, there are now but two questions before us for decision. The first relates to the admission of evidence and the submission to the jury of the question of mental suffering and anguish. The amended complaint, after fully describing the physical injuries complained of, proceeds:

" . . . that, at the time of said accident, said plaintiff had been, and was, pregnant with child, said pregnancy being of four months' duration, and that, as a result of the said negligent, careless, and wrongful conduct of the defendants, the said child to be born has been and is greatly, seriously, and permanently injured, deformed, crippled and rendered an invalid; that said plaintiff received a great and permanent shock to her nervous system, and said plaintiff has suffered, and will continue permanently to suffer, great pain and anguish."

It is true that the word "mental" is not used, but, taking the conditions alleged regarding pregnancy as added to the physical injuries, described in great detail, and applying our liberal rule, so well established, we think, in the absence of a motion to make more definite and certain, the allegation must be construed as tendering the issue of mental anguish. Counsel and the trial court evidently so considered it, as the objection to the testimony was not based upon any supposed lack of allegation in the complaint. Before the trial of the case, the mother was safely delivered of a normal, healthy child, and no attempt was made to prove any injury to the unborn child. The respondent wife, on the witness stand, was asked, "What if any suffering did you feel because of the imminent possibility of a miscarriage?" To this question, an objection was interposed and overruled. Then the question was propounded:

"Q. First, did you suffer because of that fact? A. Well, I worried an awful lot. Q. That is what I mean by suffering—I will not pursue it further."

No other or further evidence on this subject was offered.

The general rule seems to be, as stated in 8 R. C. L., § 78, p. 523, as follows:

"It is a matter of common knowledge that mental suffering follows bodily pain as a necessary consequence, especially when the latter is so severe as to create apprehension and anxiety. While the law does not attempt to draw metaphysical distinctions between the various sensations to which the human mind is subject, it may, nevertheless, recognize an intimate though indefinable connection between a cause and its mental consequences, and it will not ordinarily allow the subtleties and inherent difficulties of the subject to serve the advantage of the wrongdoer where the connection between his wrong and its result is reasonably manifest. Accordingly, in a proper cause, damages for terror and anxiety incident to outraged feeling and humiliation are properly allowed; and it is also a rule that one may recover for mental anguish caused by a reasonable dread of future illness or death as a result of an injury, but not for such dread as may be vague or fanciful or that may continue after the conditions which might result in such future illness or death have been removed. It should of course appear that the fear for which recovery in damages is sought is the natural consequence of the injury, or that it is a natural and probable consequence of injuries of the character complained of."

A very similar case is that of *Prescott v. Robinson,* 74 N. H. 460, 69 Atl. 522, in which the court said:

"Assuming that she suffered mental distress, not only in regard to the effect of the accident upon her person, but in regard to its effect upon the unborn child, it cannot be doubted that it was proximately caused by the alleged negligence of the defendant. It was a natural result reasonably to be apprehended

under the circumstances. The fact that the defendant was ignorant of her condition does not lessen his liability for the natural consequences of his negligent act. . . .

"The fact that one of the results of the alleged injury in this case was the deformity of the foetus, which became the child's misfortune upon its birth, does not prove that no right of the plaintiff was invaded in this regard for which damages are allowable. On the contrary, it shows that her natural right to the normal action of her physical organs in the growth and development of the foetus was seriously infringed. *Alabama, etc., R. R. v. Hill*, 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65. Her ability to be delivered of a normal and healthy child was jeopardized, and her grief and apprehension before the birth on account of what the probable or not unreasonable effect would be upon the child is not a remote consequence of the alleged negligence of the defendant. It was her right to produce a healthy child; and, if by the defendant's negligence her enjoyment of that right was diminished or violated, her mental distress for the unnatural result to be expected was an element of damage for which she should be compensated, as well as her disappointment at the birth of a deformed child."

Other cases which support the rule are: *Godeau v. Blood*, 52 Vt. 251, 36 Am. Rep. 751; *Warner v. Chamberlain*, 7 Houst. (Del.) 18, 30 Atl. 638; *Walker v. Boston & Maine Railroad*, 71 N. H. 271, 51 Atl. 918; *Butts v. National Exchange Bank*, 99 Mo. 168, 72 S. W. 1083; *Southern Kansas R. Co. of Texas v. McSwain*, 55 Tex. Civ. App. 317, 118 S. W. 874; and *Watson v. Augusta Brewing Co.*, 124 Ga. 121, 52 S. E. 152.

Our cases of *Bennett v. Oregon-Wash. R. & Nav. Co.*, 83 Wash. 64, 145 Pac. 62, and *Estes v. Babcock*, 119 Wash. 270, 205 Pac. 12, have no application, because it clearly appears that in neither of these cases was there any evidence offered of any mental anguish or anything other than the pain and suffering naturally incident to the physical injuries complained of; nor

is the case of *Kneass v. Cremation Society,* 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442, in point, because there, there was no physical injury.

We conclude that it was not error to permit the introduction of the testimony quoted.

█ The allegations of the pleadings and the evidence introduced by respondents tend to show that respondents were driving their automobile in an easterly direction along a public highway in the hours of darkness. As they approached a cross road where they intended to make a left turn, the respondent husband, who was driving, gave the required and customary signal by seasonably extending his arm to the left and then, at the proper place, having slowed down for that purpose, swung into a left turn. Appellants' car came from behind them at great speed, without warning of intention to pass, and as respondents' car turned toward the left it was struck on the left and rear by appellants' car. Respondents had by their mirror observed the appellants' car in the rear before the accident, but at what seemed to them a safe distance.

Upon the other hand appellants' answer tendered the issue of contributory negligence, and their testimony was to the effect that they were proceeding at all times at about thirty miles per hour, observed the car ahead and as they came up within about thirty feet behind it they sounded their horn, pulled over to the extreme left of the road and started to pass. As they were so passing, the driver of respondents' car extended his arm to the left, and at the same instant turned his car sharply into the left turn and caused the collision.

Thus it would appear that the case turned upon a clearly defined issue of fact, as to which, if either, driver, was negligent in the time and manner of giving

a signal which would justify his act and which act should follow only a signal seasonably given.

Appellant complains of certain instructions on the subject of control which are:

"You are instructed that it is the duty of persons driving and operating automobiles along and upon the public highways of this state, to so drive, handle and manage said automobile that the same is at all times under the control of the person driving the same, and if you find from the evidence in this case that, at the time of, and immediately prior to, the collision complained of in this case, the defendant, C. P. Arrowsmith, did not have his automobile, which he was then driving, under control, and that the failure of the said defendant to have said automobile under control was the proximate cause of the injuries complained of in this case to the plaintiffs, then your verdict must be for the plaintiffs."

"A person driving an automobile along the public highways of this state must at all times so drive said automobile that he has control of said automobile, and he must keep a proper lookout ahead and be able to reasonably stop and control said automobile in an emergency, and if he fails to do so when under all the circumstances and conditions then surrounding him by the exercise of reasonable care and prudence in that behalf he should be able to do so, he is guilty of negligence."

It seems to us that these instructions have no bearing on the real issue, and probably because they contain no definition of just what is meant by "control," they would be improper in any case. If the jury believed respondents' testimony that a signal for a left turn was seasonably made, then it was the duty of anyone approaching from the rear to observe such signal and yield the road to respondents until the turn was completed. That is an imperative duty and "control" is at most but a minor element in it. If the jury believed appellants' testimony, that they had sounded

the horn while still thirty feet in the rear and then pulled over to the extreme left, and were in the act of passing when the respondents gave their signal and at the same instant began to make the left turn, then no "control" consistent with passing a moving car could have availed anything. If these instructions stood alone, possibly they might have drawn the attention of the jury from the real issue, but we think they were practically eliminated from the case by proper instructions which followed.

The court properly instructed upon the duty of drivers to respect the rights of others upon the highway, gave the statutory rule as to the duty of one undertaking to pass another vehicle and as to the duty of one about to make a left turn, thus sharply defining the law applicable to each theory presented by the evidence, and, from an examination of the whole record we are convinced that the jury could only have applied the law as so given. The instructions as to control, if erroneous, were under the facts of this case without prejudice.

The judgment is affirmed.

MITCHELL, BEALS, and HOLCOMB, JJ., concur.