[No. 33131.   Department One.   June 23, 1955.]

EUGENE FINK et al., *Respondents,* v. CLARENCE G. DIXON et
al., *Defendants,* SYSTEM TANK LINES, INC., *Appellant.*[1]

¹Reported in 285 P. (2d) 557.

*Joseph E. Hurley,* for appellant.

*Donald L. Burcham,* for respondents.

OTT, J.—The defendants Clarence G. Dixon and Harold W. Ellefson are partners and operate the Commercial Truck & Automotive Repair Service (hereinafter referred to as Commercial), a small automotive repair shop in the city of Spokane.

On July 24, 1953, the defendant System Tank Lines, Inc. (hereinafter referred to as System), brought a tank truck and trailer to Commercial for repairs, which included the welding of two hose carrier brackets on the side of the trailer. A System work order, specifying the work to be performed, was sent with the equipment and contained a statement that the tank trailer had been steam cleaned for three and one-half hours.

The trailer, which had been used to haul gasoline, contained explosive fumes. While defendant Dixon was welding the hose carrier brackets on the side of the trailer, an explosion occurred which demolished it and caused a concussion and noise felt and heard for several blocks.

Defendant System maintained its own truck repair shop and normally would have done its own servicing and repairs. However, a few days prior to July 24th, it became involved in a labor dispute with the mechanics' union, which caused its repair shop to be closed. The shop superintendent, on behalf of System, entered into an agreement with Commercial to rent its garage and have the System me-

chanics work there. The work on the trailer involved in the explosion was being done by System employees. When they were ready to do the welding, none of the mechanics was familiar with the operation of the available electric welding machine. Defendant Dixon then agreed to do this part of the work as an accommodation.

At the time of the explosion, plaintiff wife, who was six months' pregnant, was visiting at a home near the repair shop. She described the incident as follows:

". . . suddenly, we heard this terrific explosion. I looked down toward the floor expecting to see the floor drop out from under me and I grabbed the table right there holding my balance and the house shook and the windows shook and dishes rattled and everything and it was a terrific occurrence for me. . . . Q. Did that frighten you? A. Yes, definitely. Q. Did you feel any physical sensation at that time? A. Yes, the baby somersaulted, that may be my term, that is what he did, and he dropped . . . it left me feeling weak and everything came up in my throat. I was sick to my stomach and I was dizzy and it just unnerved me completely."

From July 24th, the date of the explosion, until August 4th, when the baby was born prematurely, plaintiff wife suffered anxiety and ill health. It was necessary for the baby to remain in the hospital for seven and one-half weeks, during which time he was in an isolette. At the time of the trial, the boy, then nine months old, had progressed satisfactorily, although it was stated that he was still weak, frail, and underweight.

The jury returned a verdict in favor of the plaintiffs and against defendant System. The trial court entered judgment upon the verdict, and System has appealed.

Appellant assigns error to the rulings of the trial court denying appellant's motions (1) for nonsuit, (2) for a directed verdict at the close of the trial, and (3) for judgment notwithstanding the verdict.

In making the above motions, the moving party admits the truth of the evidence of the party against whom the motions are made, and all inferences that reasonably can be drawn therefrom. Such motions require that the

evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Fedland v. Teshera,* 40 Wn. (2d) 256, 260, 242 P. (2d) 751 (1952), and cases cited; *Kemalyan v. Henderson,* 45 Wn. (2d) 693, 696, 277 P. (2d) 372 (1954), and cases cited.

Likewise, this court has held that, in ruling upon a motion for a directed verdict or for judgment notwithstanding the verdict, no element of discretion is involved and the trial court can grant such motions only when it can be held, as a matter of law, that there is no evidence nor reasonable inference therefrom to sustain a verdict. *Kemalyan v. Henderson, supra,* p. 697, and case cited.

Appellant contends that it was not negligent, as a matter of law, and that the court should have so ruled. In order to find that appellant System was negligent, it must be proved that it performed or failed to perform some act which a reasonably prudent person would or would not have done under the same or similar circumstances. *Malland v. Sims,* 173 Wash. 649, 653, 24 P. (2d) 70, 27 P. (2d) 1119 (1933), and cases cited; *Severns Motor Co. v. Hamilton,* 35 Wn. (2d) 602, 604, 214 P. (2d) 516 (1950), and case and text cited; *LaMoreaux v. Fosket,* 45 Wn. (2d) 249, 255, 273 P. (2d) 795 (1954).

Appellant System had had the inside of the trailer steam cleaned the night before it was sent to Commercial to have the welding done. Would a reasonably prudent person, under the same or similar circumstances, have done more than this? According to the testimony of several expert witnesses, steam cleaning is only a preliminary step in the process of eliminating gasoline fumes from a tank of this type. Appellant System's own superintendent testified that the tank exploded because it had not been "degassed" and was not ready for welding. Further, defendant Ellefson testified as follows concerning a conversation with System's garage foreman:

"And, then, I asked him also, 'Well, is the thing safe to weld on, have you degassed it?' and he said, 'Yes,' and I said, 'Well, is there any other procedures that you use to safeguard the equipment?' And he said that normally they

used blowers and so forth like that, and I told him, 'Well, we don't have anything like that, we just throw the garden hose in it and fill it above the point of the weld.' . . . and he said that wasn't necessary and it was safe enough to weld the way it was, . . ."

■ Under the evidence, the jury could and apparently did conclude that appellant System was negligent in that it did not use due care in preparing the trailer for welding.

Appellant next contends that, in any event, since its truck and trailer were under the exclusive control of Commercial, liability should not have been fixed upon System. From the testimony concerning the agreement entered into between the parties, the jury could have concluded that the men working at Commercial were actually employees of appellant System. System's workmen only reported at Commercial when there was work to be done on a System truck, and they also brought their own tools. Neither defendant Ellefson nor defendant Dixon had anything to do with employing or supervising the System mechanics. Defendant Ellefson described the agreement as follows:

". . . he [System's superintendent] was to pay me $3.50 an hour per man and I was to pay the [System] employees $2.03 an hour and they were to furnish all parts and also the men and the foreman and the equipment to the shop and do their own labor and the only time we were to help them at any time is when their foreman needed any help, and Mr. Dixon was the only one that was to be able to work on the equipment, as I wasn't a mechanic, and Mr. Duncan knew so."

■ We conclude that there was sufficient evidence presented in this case to submit the cause to the jury and, further, that there was sufficient evidence or reasonable inferences therefrom to support the jury's verdict. The trial court did not err in denying appellant's motions.

Appellant next assigns error to the giving of instruction No. 10, regarding the factors to be considered in assessing damages against appellant. This instruction reads in part as follows:

"If you find from a preponderance of the evidence and in the light of these instructions that the plaintiffs are entitled

to recover damages from either or both of the defendants you may and should take into consideration the following factors in assessing such damages: such reasonable expenses as may have been incurred by the plaintiffs for the extraordinary care of the child, Randle Fink, because of his premature birth, that is, those expenses over and above those which would have been incurred in the care of a normal full-time infant . . ."

In the same instruction, the court told the jury that respondents could recover damages for respondent wife's physical suffering, "mental fear, worry and anxiety over any injury to herself or her unborn child."

Appellant's exception to the instruction was based upon its contention that the damages set forth therein included prenatal injuries to the infant, which are not compensable.

■ The instruction did not include any damages to the infant for prenatal injuries, and hence the claim of appellant is without merit. The instruction simply allowed as factors in considering the amount of the damages, (1) the cost to the respondents of the extraordinary care over and above the charges for a normal childbirth, and (2) reasonable compensation to respondent wife for her worry and anxiety over injury to herself and possible injury to her unborn child, both of which were recoverable as her personal injury and damage, and not those of the child. *Otey v. Bradley,* 63 Wash. 500, 115 Pac. 1045 (1911), and cases cited; *Elliott v. Arrowsmith,* 149 Wash. 631, 272 Pac. 32 (1928), and cases cited; *Pierce v. Pacific Mut. Life Ins. Co.,* 7 Wn. (2d) 151, 109 P. (2d) 322 (1941), and cases cited; 13 Wash. L. Rev. 1 (1938).

Error is also assigned to the giving of instruction No. 1-A, which included, as a factor of damages, the continuing worry and anxiety of respondent wife up to the time of the trial.

■ Appellant excepted to instruction No. 1-A upon the ground that there was no evidence to support this element of damage. The testimony of respondent wife was that, even at the time of the trial, her baby was underweight, frail, and unable to sit up as a normal child of that age, and that her anxiety and worry still existed. There was suffi-

cient evidence in the record to submit to the jury the question of the continuation of this element of damage.

Appellant next assigns error to the failure of the court to give requested instruction No. 4. The reasons given for sustaining the giving of instruction No. 1-A are applicable to the refusal of the court to give requested instruction No. 4. We therefore hold that the court did not err in failing to give appellant's requested instruction No. 4.

Finally, we find no merit in appellant's contention that the court erred in denying its motion for a new trial.

The judgment of the trial court is affirmed.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

[1]Reported in 285 P. (2d) 560.