**Gale Barney JUDD, Plaintiff and Appellant,**

v.

**ROWLEY'S CHERRY HILL ORCHARDS, INC., a corporation, and E. W. Elfawn Wall, Defendants and Respondents.**

No. 16332.

Supreme Court of Utah.

May 12, 1980.

---

Woodrow D. White, Salt Lake City, for plaintiff and appellant.

Ray H. Ivie of Ivie & Young, Provo, for defendants and respondents.

WILKINS, Justice:

Plaintiff appeals from judgment entered on a jury verdict by the District Court of Utah County, awarding plaintiff $17,500 as personal injury damages arising from an automobile collision, and also appeals from that Court's order denying her motion for a new trial.

On July 20, 1977, plaintiff was driving a passenger automobile south at approximately forty miles an hour along a rural road which had been freshly oiled and graveled and had no painted center line. Defendant Elfawn Wall, an employee of Defendant Rowley's Cherry Hill Orchards, Inc., was driving a pickup truck north along the same road.

Plaintiff testified that she first saw the truck, when it was 300 feet from her,

emerge from a dip in the road on her side of the road. She veered to the right and slammed on her brakes. Defendant Wall (hereafter "defendant") testified that he did not see plaintiff until she was about 50 feet away; that both vehicles were traveling in the middle of the road, as was customary in that vicinity; that he was traveling at about 30 miles per hour, and that he slammed on his brakes when he saw plaintiff. On cross-examination, defendant admitted that he may have veered slightly to the left instead of the right when he saw plaintiff's car. The two vehicles collided head-on.

Trooper Lynn B. Richardson, Utah Highway Patrol, investigated the accident. He testified that when he arrived, the two vehicles had not yet been moved; that the vehicles were nearly headlight to headlight; but that the impact had knocked the rear of the passenger vehicle to the east. Skid marks were visible, and he said, leading to the front wheels of plaintiff's vehicle and to the wheels of the defendant's truck. After the vehicles were removed, Richardson measured these skid marks in relation to the road. His measurements were as follows: Plaintiff's car left 79 feet of skid marks to the front wheels; defendant's truck left 67 feet of skid marks; the road was 21 feet wide at the point of impact, and 18.4 feet wide at the point plaintiff's skid marks started; the road was straight on the east side, and broken and uneven on the west side; and the skid mark made by plaintiff's *left* tire was 9 feet 11 inches from the east edge of the road where the skid mark began, and 11 feet 7 inches from the east edge of the road at the point of impact. Trooper Richardson drew a graph of the scene which was admitted in evidence. It showed that the *right* tires of defendant's truck left a skid mark which was 10 feet 3 inches from the east edge of the roadway at the start of the skid mark and 11 feet 5 inches from the east edge at the point of impact. The officer testified that defendant was totally on the wrong side of the road.[1]

Newell Knight, Utah Highway Patrol, an accident reconstructionist, was presented a hypothetical question based on the measurements made by Trooper Richardson of the scene, and other evidence presented in the case. Knight was asked to compute the distance and position of each vehicle at the time each driver perceived the other. He testified, assuming an average reaction time, and assuming that neither vehicle had changed course prior to the application of the brakes, that plaintiff was 154 feet from the point of impact at the time she saw defendant's truck, and defendant was 124 feet from the point of impact at the time he saw plaintiff's car. He placed plaintiff's vehicle in the middle of the road to the left of center, at the time of perception, and defendant's truck approximately in the middle of the road. He admitted, however, that his computations would be incorrect had either vehicle swerved prior to the time the brakes locked in a skid.

Plaintiff suffered a laceration which left a scar above her left eyebrow about an inch long. Her left kneecap was shattered, open, and bleeding. Her right knee was torn and bleeding, but not lacerated as severely as the left knee. Her right ankle was open and bleeding, the bone was sticking out, and her foot was turned at a 90-degree angle. At the emergency hospital, fragments of bone were removed from plaintiff's kneecaps, and the largest pieces of both patellas were wired. Later, plaintiff developed an infection in her left knee. Plaintiff was unable to return to her job as a licensed practical nurse until January, 1978, and testified that she still could not perform some of her regular duties and continually took medication for pain. This testimony was corroborated by plaintiff's supervisor. On July 20, 1978, plaintiff underwent further surgery for the removal of the patella of her left knee, as it had not healed properly and was jagged on the underside. She had not been released to return to work at the time of the trial on December 11, 1978.

---

1. Plaintiff, traveling south, should have been on the west half of the roadway, while defendant, traveling north, should have been on the east half.

Prior to the accident, plaintiff had engaged in horseback activities, and had a registered Appaloosa mare which she had been accustomed to riding in horse shows and races, while working on the farm and for pleasure. She had also enjoyed snow skiing, water skiing, and dancing, none of which she could do after the accident without considerable pain.

Plaintiff's medical experts testified that the injury to plaintiff's mid-foot was serious because of the kinds of motion normally present in the foot; that dislocations in that area often result in early arthritis and considerable pain; that plaintiff had lost 50 percent of "inverse and everse motion, meaning in and out motion of the right ankle as compared to the left." The doctors testified that a patella, or kneecap, is removed only as a last resort, and that "heroic efforts" are generally employed to save them; that the patella is important to maintain proper leverage of the thigh muscle, and the patella is useful in "kneeling, climbing stairs; many functions of both daily living and . . . athletically." A Doctor Chapman testified that plaintiff would have trouble performing many of the tasks of a licensed practical nurse and recommended that she try to get lighter work in that field or retrain for a different field. Doctor Chapman testified that plaintiff suffered a loss of 26 percent of the total bodily function, basically attributable to both knees and the right ankle. Plaintiff's age is not in evidence but it was established that at the time of her injury she had a reasonable life expectancy of 57.7 years.

Defendants' medical expert testified that it was his opinion that plaintiff was 18 percent disabled, attributing no disability to the right ankle and foot, though he acknowledged that injury was susceptible to early arthritis.

Plaintiff presented medical and hospital bills incurred by her amounting to $8,335.08, and claimed loss of wages of $7,426.40 to the date of the trial, with a projected cost of $2,135.00 for another scheduled operation with consequent loss of wages.

The issues were submitted to the jury on special interrogatories. The jury found that defendant was 70 percent negligent, plaintiff, 30 percent negligent; and found special damages of $15,000 and general damages of $10,000. The District Court then reduced the total of $25,000 damages by 30 percent and awarded plaintiff judgment of $17,500.

Plaintiff appeals, requesting a new trial, and urging two principal points on appeal: (1) that the Court erred in submitting the issue of negligence to the jury, and (2) that the damages awarded are inadequate considering the extensive injury, scars, and permanent disability and suffering of the plaintiff. The second point is argued on three different grounds.

I. The Negligence Issue

Plaintiff submitted proposed instructions which included an instruction that there was no evidence that plaintiff was negligent, and an instruction that defendant was negligent as a matter of law.

The Court refused these instructions and instead presented the issue of the parties' negligence to the jury in its Instruction No. 6:

It was the duty of the drivers to use reasonable care under the circumstances in driving their vehicles to avoid danger to themselves and others and to observe and be aware of the condition of the highway, the traffic thereon, and other existing conditions; in that regard, they were obliged to observe due care in respect to:

1. To use reasonable care to keep a lookout for other vehicles, or other conditions reasonably to be anticipated.

2. To keep their motor vehicles under reasonably safe and proper control.

3. To drive at such a speed as was safe, reasonable and prudent under the circumstances, having due regard to the width, surface and condition of the highway, the traffic thereon, the visibility, and any actual or potential hazards then existing.

4. To drive their motor vehicles on their own right side of the highway.

Failure of either driver to operate his vehicle in accordance with any of the foregoing requirements of the law would constitute negligence.

Plaintiff argues that the sole proximate cause of the collision was defendant's negligence in that he drove his truck on the wrong side of the highway, failed to keep a proper lookout for other vehicles, failed to yield at least half of the roadway to plaintiff, and swerved to the left rather than the right. Plaintiff contends that there was no credible evidence from which it could be inferred that plaintiff was not keeping a proper lookout, or did not keep her vehicle under reasonably safe and proper control; that there was no evidence that plaintiff was driving at a speed which was unsafe for the existing conditions; and that even if the jury found that plaintiff was not totally on her side of the roadway at the point she perceived defendant's truck, that such negligence, if any it be, cannot be a proximate cause of the collision when the evidence was that both vehicles were entirely on plaintiff's side of the roadway at the point of impact.

■ In determining negligence of the parties, of course, the jury is not confined to those items listed on the Court's Instruction No. 6, but is entitled to consider any other negligence on the part of plaintiff under the Court's definition of negligence in its Instruction No. 4, which was:

Negligence is the failure to do what a reasonable and prudent person would have done under the circumstances, or doing what such person under such circumstances would not have done. The fault may lie in acting or in omitting to act.[2]

■ But there is at least some credible evidence in this record that plaintiff was driving in the middle of the road which the jury was entitled to believe. While the degree of negligence attributed to the plaintiff may arguably have been high, as the District Court observed, in view of the evidence in this case, it is within the prerogative of the jury to make that determination, and we do not overturn a jury verdict if there is any credible evidence on which reasonable minds could conclude as the jury did.

## II. The Damages Issues

■ The plaintiff first contends—in essence—that the Court prejudicially failed to instruct the jury with sufficient specificity on pain and suffering, thereby omitting or minimizing the mental aspect thereof, which is significant.

The Court's Instruction No. 8, stated in pertinent part:

In determining the amounts, you should consider the nature, character, and extent, and severity of her injuries, and whether, so far as shown by the evidence, such injuries have heretofore caused or will hereafter cause her *pain, suffering*, impairment of bodily functions, disability, impairment of earning capacity, and future medical and hospital expenses. (emphasis added)

Plaintiff's proposed instruction included on this point:

In determining the amount of such damages, you are instructed that plaintiff is entitled to compensation for all pain and suffering, if any, *both mental and physical*, which plaintiff has endured since the time she sustained her injury, and which she will probably endure in the future. (emphasis added)

We believe because of the evidence in this case, that a categorizing of pain and suffering as *mental and physical* was needed. We believe without such specificity the jury here may well have considered only the physical aspects of pain and suffering because of the inadequate award of general damages, noted infra. And, of course, in this case, as in many, mental pain or anguish is indeed a significant factor in assessing damages.

---

**2.** It is noted that neither party requested an instruction on proximate cause and none was given by the Court. The special verdict, however, included the element of cause in the interrogatories.

■ The pain and suffering for which damages are recoverable in a personal injury action include not only physical pain but also mental pain or anguish, that is, the mental reaction to that pain and to the possible consequences of the physical injury. Included in mental pain and suffering is the diminished enjoyment of life, as well as the humiliation and embarrassment resulting from permanent scars and disability.

This Court has recognized these elements of mental pain and suffering in the case of *Paul v. Kirkendall*, 1 Utah 2d 1, 261 P.2d 670 (1953). Other courts have also recognized the importance of mental pain or anguish in assessing general damages. An instruction concerning mental as well as physical pain and suffering was held to be proper in *Schwenger v. Gaither*, 87 Cal. App.2d 913, 198 P.2d 108 (1958); *Labarthe v. McRae*, 39 Cal.App.2d 565, 104 P.2d 75 (1940); and *Fink v. Dixon*, 46 Wash.2d 794, 285 P.2d 557 (1955). Failure to so instruct was considered reversible error in *King v. Britt*, 267 N.C. 594, 148 S.E.2d 594 (1966); and *Bruce v. Madden*, 208 Va. 636, 160 S.E.2d 137 (1968). In the *Bruce* case, the Virginia Court held that failure to instruct on mental pain and suffering is reversible error even where there is no direct evidence of such mental pain, humiliation or embarrassment, as "[it may be] fairly inferred from injuries sustained"; 160 S.E.2d at 140.

We hold that the Court erred prejudicially in refusing plaintiff's proposed instruction and that plaintiff is entitled to a new trial on the issue of general damages before a properly instructed jury. The award of $10,000 for general damages appears inadequate to us in relation to $15,000 for special damages, in the context of the abundant evidence of plaintiff's permanent disability, multiple surgical operations, the extent of her pain, mental and physical, now and in the future, coupled with evidence of her life expectancy of 58 years.

■ Plaintiff further argues that the jury's verdict for special damages were erroneous in that it was $761.48 deficient. She contends that the evidence concerning medical and hospital costs and loss of earnings to the date of the trial in the amount of $15,761.48, was uncontroverted, and that the jury verdict of $15,000 should have been increased by the Court to $15,761.48. Defendant stipulated that the medical expenses were $8,335.08, but he contends that plaintiff's ability to work (for which she claims loss of $7,426.40) was disputed and that the jury's award was within the facts as established by the evidence. Upon examination of the record, we find that while defendant disputed plaintiff's disability to work in the future, he made no contention that plaintiff's evidence was erroneous, nor did he offer any evidence impeaching plaintiff's testimony of the number of working hours lost, or her rate of pay for those hours during convalescence following two separate surgical operations. The only evidence before the jury, which was credible, was that plaintiff's special damages amounted to $15,761.48. The jury was instructed to determine the amount which would fairly compensate plaintiff for these items, and obviously disregarded the uncontroverted evidence in returning a verdict of $15,000. The special verdict should therefore be increased to $15,761.48.

Finally, plaintiff contends that the general damages awarded by the jury were grossly inadequate and that the jury disregarded the great weight of the evidence and the instructions of the Court in awarding only $10,000. Plaintiff's argument has force, but as we believe the inadequacy of plaintiff's general damages can basically be attributed to improper jury instructions, we do not discuss this issue further.

As the comparative negligence of the parties was proved, we see no necessity for a rehearing on that issue nor one on special damages, which were proved. The District Court's judgment is vacated, and this case is remanded for trial on the issue of plaintiff's general damages only. The District Court is directed to increase judgment for special damages to $15,761.48. Costs to plaintiff.

MAUGHAN, J., concurs.

STEWART, J., concurs in the result.

CROCKETT, Chief Justice (dissenting):

I am unable to agree with the court's decision because I do not believe that it treats the parties with justice. It is my view that the plaintiff has had her entitlement to a fair trial; that upon instructions which presented the issues in a fair and understandable manner she has had a determination thereon by a jury; and that determination has in turn had the approval of the trial court.

It is suggested that the damages awarded should have been greater and that this may have been due to the failure to include the term "mental" as a modifier of the term "suffering." I think altogether too much importance is placed on that omission. It seems to me that the way any suffering or distress is experienced is through a "mental" perception thereof. I cannot believe that the omission had any substantial effect upon the outcome of the trial. I therefore do not see it as prejudicial error.

This court has innumerable times acknowledged that the question of damages is for the jury to determine; and further, that it is the jury's prerogative to judge the credibility of the evidence; and specifically that it is not obliged to follow abjectly the plaintiff's evidence as to damage, but may place its own evaluation on the evidence.

Illustrative of the principle here involved is the case of *Arnold Machinery Co., Inc., v. Intrusion Prepakt Inc.*, 11 Utah 2d 246, 357 P.2d 496 (1960): In that case, the plaintiff had sued for repairs made to certain machinery and the only evidence presented was that of the plaintiff to the effect that the expense thereof was $3,580.52. In spite of that undisputed evidence, the jury awarded the plaintiff $2,500. On appeal, the plaintiff contended that because the only evidence was that presented by its witnesses, the jury was not entitled to find the lesser amount. On the basis of the principles stated above concerning the prerogative of the jury, this Court affirmed the judgment.

There is yet another reason why I think the Court's decision herein does not treat the parties fairly. If the verdict and judgment are unsound, the case should be remanded for trial on all issues. This is a prime example of the kind of case that the trial court and jury should have the entire picture relating to the contested issues in order to properly assess damages, if that becomes necessary. According to my experience and judgment, this type of situation can result in a lop-sided and unfair trial unless the parties each have the opportunity of presenting fully their evidence and contentions to the jury. Consistent with honoring the right of the parties to a trial by jury, I would affirm the judgment; but at the very least would not deprive the defendants the privilege of presenting their side of all disputed issues.

HALL, J., concurs.